SINGER SEWING MACH. CO. *v.* STOCKTON.

(Division B. Nov. 5, 1934.)

[157 So. 366. No. 31364.]

R. C. Cowan and David Cottrell, Jr., both of Gulfport, for appellant.

210

R. A. Wallace, of Gulfport, for appellee.

212

**Ethridge, P. J.,** delivered the opinion of the court.

Mrs. Martha Ann Stockton, the appellee here, brought suit against the Singer Sewing Machine Company, appellant, alleging that one R. S. Walker was a duly authorized agent of the company and engaged in the business of selling sewing machines in Biloxi, Harrison county, Mississippi, and on a certain day he came to her residence, knocked at the door, and appellee came to the door. That he stated he was selling sewing machines, and handed her some circulars, and asked her if she was interested in a sewing machine. She answered that she did not desire to buy a sewing machine. He then asked her for a match, and, when she turned and went into the house to get one, he came in the room where she was, and said, if she could not buy a machine, could he leave one with her for trial, he to come back later for it. He then asked her if she was married and if she had dates, to which she (appellee) replied that she was married and did not have dates. He then asked what her husband did as an occupation and whether he worked at night, and whether the appellee ever got lonesome, and whether she had an automobile, and asked that she come to Gulfport to see him. She told him her husband was a constable, and that she did not get lonesome. That Walker did not leave then, but walked across the room and tried to catch the appellee's hands, and that she gave him no encouragement. That Walker said, ''Oh, don't do like that.'' That appellee then became excited, and Walker turned and stood by the door, saying, ''Let me know if you want that machine and if you will fill a date with me I will leave a machine here with you,'' and then walked outside and left the premises.

It was further testified that he came back after receiving a letter from the company, in answer to a complaint made by the appellee, and offered to apologize, but the appellee refused to accept his apology.

Walker testified that he was near the appellee's house on a former occasion, and a lady came up to the vehicle, on which a machine was strapped, and seemed to be interested; that he returned to his headquarters at Gulfport, and, thinking she was interested in sewing machines, on the morning in question he went to her home in Biloxi and inquired, and she told him she did not want a machine, and he stated that he had seen her look at the machine a few days before, and thought it possible she was interested, and she said it was probably another lady, and that probably he wanted a date with that lady. He then asked her who the lady was, and if she herself made dates, and she said she did not; that he said if she desired or wanted a machine he would be glad to leave one for her approval; that he did not enter the house, and did not place his hand upon her in the house.

The appellee was supported in her testimony by another occupant of the building in which the appellee lived, who heard the conversation, but did not see Walker touch the appellee. This witness said that Walker did leave the chair where he was sitting and went over to where the appellee was, and the witness heard the conversation that took place.

As stated, the appellee wrote to the appellant complaining, and Walker said he received a letter asking for particulars, and that he went to the appellee's house to inform her that he was not the person who had wronged her. Walker was still in the employ of the company, but had been moved from Gulfport, where he was manager, to Meridian.

This case is a difficult one. Ordinarily, when an agent makes a departure from the business of the principal, and is on business of his own, the principal is not responsible for the agent's individual wrongs. Here, however, the agent was in pursuance of the principal's business, and it is so mixed with the acts and conduct of his

own pursuits that we cannot say there was a departure from the principal's business.

It appears from the appellee's testimony, which was accepted by the jury, that during this misconduct Walker was still trying to sell the appellee a machine, and his attempt to cultivate relations and make engagements with her seems to have been largely for the purpose of effecting a sale. At least, the jury was authorized in so believing.

We realize that this is a type of case that ought not to be greatly encouraged by the court. It was no part of the appellant's purpose or business for its agent to have dates with customers for his own private purposes, but here the conduct is so blended with the attempted sale that it is difficult to separate the conduct of the agent, Walker, from his business as salesman.

The law in this state is settled that, if an agent, while in the course of his duty, commits a wrong or tort in reference thereto, the master or principal is responsible. If a servant commingles his personal business with his master's business, the master is liable for the servant's conduct while so engaged. Indianola Cotton Oil Co. v. Crowley, 121 Miss. 262, 83 So. 409; Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507; Barmore v. Railway Co., 85 Miss. 440, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594, and Richberger v. Express Co., 73 Miss. 161, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522.

The judgment of the court below will be affirmed.
Affirmed.