Shirley DOUGLAS, Successor in Interest of Schwartz & Associates, P.A., and Interstate Fire and Casualty Co., Plaintiff

v.

TRUSTMARK NATIONAL BANK and Regions Bank, Defendants

CIVIL ACTION NO. 3:12-cv-523-FKB

United States District Court,
S.D. Mississippi,
Northern Division.

Signed August 17, 2016

Filed August 18, 2016

Philip Williams Thomas, Philip W. Thomas, PA, Jackson, MS, for Plaintiff.

William Trey E. Jones, III, Joseph Anthony Sclafani, Brunini, Grantham, Grower & Hewes, PLLC, Benjamin McRae Watson, Butler Snow LLP, Jackson, MS, Emerson Barney Robinson, III, Butler Snow LLP, Ridgeland, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

F. Keith Ball, UNITED STATES MAGISTRATE JUDGE

This cause is before the Court on several motions: Motion for Summary Judgment [37] filed by Defendant Regions Bank; Motion for Judgment on the Pleadings [39] filed by Defendant Trustmark National Bank; Motion to Strike Affidavit of Jason Sweatt [43] filed by Plaintiff; and Motion for Discovery [45] filed by Plaintiff. Having considered the motions and related submissions of the parties, the Court finds that Defendants' motions should be granted and Plaintiff's motions should be denied.

### I. Facts and Procedural History

In June 2007, after being injured in an automobile accident, Shirley Douglas hired a law firm, Schwartz & Associates, P.A. (Schwartz), to pursue her claims arising from the accident. [1-1] at 3. On July 31, 2009, Douglas filed a Chapter 13 bankruptcy petition in the United States District Court for the Northern District of Mississippi. *Id.* On or about March 13, 2010, Schwartz negotiated and Douglas agreed to a $500,000.00 settlement of her claims. *Id.* at 3-4. Thereafter, Schwartz retained attorney Vann Leonard to obtain bankruptcy court approval of the settlement and payment of Schwartz's attorney's fees and expenses totaling $172,414.68. *Id.* at 4-5.

On April 6, 2010, Schwartz tendered the $500,000.00 settlement proceeds to Leonard, after Leonard advised that the bankruptcy trustee had instructed him to hold the settlement proceeds in order to pay Douglas's outstanding medical bills. *Id.* at 4-5. Leonard deposited the funds into an account at Trustmark National Bank (Trustmark). *Id.* at 5. Leonard obtained bankruptcy court approval to pay Schwartz's attorney's fees and expenses and to tender the remaining funds to the bankruptcy trustee. *Id.* After tendering $172,414.68 to Schwartz, Leonard embezzled the remaining $327,585.32. *Id.*[1]

Following the embezzlement, Douglas sued Schwartz for negligence, legal malpractice, vicarious liability, and disgorgement of fee. [37-2]. In her suit against Schwartz, she claimed that Schwartz was "negligent in handling ... [her] affairs that were entrusted to" Schwartz, and asserting that Schwartz was "grossly negligent," she sought punitive damages to "deter other[s] similarly situated ... from committing similar acts in the future." *Id.* at 4-5.

Schwartz and its malpractice carrier, Interstate Fire and Casualty Company (Interstate), settled Douglas's lawsuit. *See* [37-4]. As part of the settlement, Douglas

---

1. Leonard later pled guilty to embezzlement in the United States District Court for the Northern District of Mississippi. [37-3]. In the criminal judgment entered against Leonard, the Court ordered him to pay restitution in the amount of $327,585.32 to the District Court Clerk's Office for disbursement to the bankruptcy trustee "for Shirley Douglas." *Id.* at 5.

and the bankruptcy trustee assigned to Schwartz and Interstate their rights to restitution from Leonard, and Schwartz and Interstate assigned to Douglas any claim or civil action they may have against any financial institution arising out of the embezzlement. [37-4] at 2.

Douglas filed the instant action as "successor in interest of" Schwartz and Interstate. [1-1]. Douglas asserts no claims in her own personal capacity. Instead, as assignee, Douglas asserts only the claims of Schwartz and Interstate.

In her Complaint filed in this case, Douglas alleges that Leonard maintained trust accounts at Trustmark and at Regions Bank (Regions), and during the months before the embezzlement, these accounts ran negative balances and were overdrawn. *Id.* at 5-7. The Complaint states that Mississippi lawyers "must hold clients' money in an interest or dividend-bearing trust account (IOLTA Account)" and that financial institutions maintaining such accounts have certain responsibilities, including reporting the balances on these accounts to the Mississippi Bar Foundation, Inc. *Id.* at 4-5. The Complaint also refers to a requirement under federal law that financial institutions file a suspicious activity report (SAR) with the Financial Crimes Enforcement Network (FinCEN) of the United States Treasury Department within thirty (30) calendar days of detecting the facts warranting such a report. *Id.* at 8.

Douglas asserts claims of conversion and negligence in her Complaint. She claims that due to the negative balances in the subject Trustmark and Regions accounts, these banks "had actual notice" and "knowledge" that Leonard was misappropriating clients' funds and, therefore, "had a duty to make reasonable inquiry and to take actions necessary to prevent further diversions, including notifying appropriate authorities." *Id.* at 8-10. She claims that the banks' negligence "proximately caused the loss suffered by" Schwartz and Interstate. *Id.* at 10. As damages, the Complaint seeks the amount Schwartz and Interstate "incurred in defending and resolving Shirley Douglas' lawsuit against Schwartz & Associates P.A.," as well as punitive damages. *Id.* at 11.

As grounds for summary judgment, Regions argues *inter alia* that: (1) the funds were never held at Regions, and thus, Douglas's conversion claim fails; (2) the Bank Secrecy Act creates no private right of action relating to the filing or non-filing of an SAR; (3) Regions owed no duty to prevent its customer from committing a tort against non-customers Schwartz and Interstate; (4) the remoteness doctrine bars Douglas's negligence claim; and (5) Mississippi law prohibits double recovery, precluding Douglas (who recovered in her settlement with Schwartz) from recovering on her claims in this case. *See* [38].

In support of its motion, Trustmark argues that: (1) Trustmark had no duty to monitor and/or report Leonard's account balance, as it was a free business checking account and not an IOLTA trust account; (2) Trustmark owed no duty to prevent its customer from committing a tort against non-customers Schwartz and Interstate; and (3) since neither Schwartz nor Interstate owned the converted funds, neither has standing to assert a conversion claim. *See* [40].

Douglas filed a response to Defendants' motions. [41, 42]. In addition to her response, Plaintiff filed a motion to strike [43] an affidavit attached to Regions' summary judgment motion. Plaintiff also filed a motion [45] pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, seeking additional discovery.

## II. Standard of Review

Regions filed a summary judgment motion pursuant to Federal Rule of Civil Pro-

cedure 56, and Trustmark filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* [37, 39]. Although both Regions and Trustmark submitted evidence outside of the pleadings, the Court finds that the standard of review for Rule 12(c) motions should be applied. In reaching the decision below, the Court relies only on the facts set forth in Douglas's Complaint and does not base any portion of the decision on the evidence submitted by Defendants.

■ Rule 12(c) motions are subject to the same standard of review as motions under Rule 12(b)(6) for failure to state a claim. *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir.2007). In deciding Rule 12(c) motions, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004)(quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999)). "[T]he central issue is whether, in the light most favorable to plaintiff, the complaint states a valid claim for relief." *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 440 n. 8 (5th Cir.2000). To withstand a Rule 12(c) motion, the "[p]laintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ballard v. Jackson State Univ.,* 62 F.Supp.3d 549, 551 (S.D.Miss.2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co., LLC,* 624 F.3d 201, 210 (5th Cir.2010)(quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (2007)).

### III. Discussion

**A. Conversion**

As this Court has previously stated:

To establish the tort of conversion in Mississippi, "there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or a wrongful detention after demand." *Cmty. Bank, Ellisville, Miss. v. Courtney,* 884 So.2d 767, 772–73 (¶ 10) (Miss.2004) (citation omitted) (emphasis in original). A plaintiff alleging conversion must carry the burden to show that he owned or had a right to possess property that was the subject of an unauthorized taking or the unauthorized exercise of control by the defendant. *Lyons v. Misskelly,* 759 F.Supp. 324, 327 (S.D.Miss.1990) (citing *LeBarre v. Gold,* 520 So.2d 1327, 1330 (Miss. 1987); *Masonite Corp. v. Williamson,* 404 So.2d 565, 567 (Miss.1981).

The Mississippi Supreme Court has held that "[i]t is elementary that ownership is an essential element of conversion." *Courtney,* 884 So.2d at 772 (¶ 10). Federal and state courts in Mississippi have enforced the requirement that the plaintiff must show that he owns the funds or property at issue. *See Evans v. Miss. Dep't of Human Servs.,* 36 So.3d 463, 477 (Miss.Ct.App.2010) ("To succeed on a conversion claim, [the plaintiff] must show he owned the funds at issue."); *Estate of Martin Luther King Jr., Inc. v. Ballou,* 856 F.Supp.2d 860, 866 (S.D.Miss.2012), *aff'd sub nom. Estate of King v. Ballou,* 544 Fed.Appx. 280 (5th Cir.2013) (same).

*Mosley v. GEICO Ins. Co.,* Civil Action No. 3:13–cv–161–LG–JCG, 2014 WL 7882149, *6 (S.D.Miss. Dec. 16, 2014).

■ Douglas's Complaint states that after receiving the $500,000.00 in settlement proceeds from Schwartz, Leonard deposited the entire amount into his Trustmark account. [1-1] at 5. The Complaint further states that after Leonard obtained approv-

al of the settlement from the bankruptcy court, he paid the entire amount of attorney's fees and expenses approved by the bankruptcy court, $172,414.68, to Schwartz, in accordance with the bankruptcy court order. *Id.* at 4–5. According to the Complaint, Leonard then embezzled only the remaining funds, $327,585.32, which were to be paid to the bankruptcy trustee of Douglas's Chapter 13 bankruptcy estate pursuant to the bankruptcy order.[2] *Id.* at 5.

Based on Douglas's Complaint, she and/or her bankruptcy estate owned the funds embezzled by Leonard, not Schwartz or Interstate. In fact, based on her Complaint, Leonard paid Schwartz the entire portion of the settlement proceeds to which the firm was entitled. Accordingly, the Complaint fails to state a claim for conversion against Trustmark or Regions, since neither Schwartz nor Interstate owned the money embezzled by Leonard.

## B. Negligence

The elements of negligence under Mississippi law are: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) damages; and (4) a causal connection between the breach and the damages, such that the breach is the proximate cause of the damages." *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*, 519 So.2d 413, 416 (Miss.1988)(citing *Burnham v. Tabb*, 508 So.2d 1072 (Miss.1987); *Boyd v. Lynch*, 493 So.2d 1315 (Miss.1986);

*Marshall v. The Clinic for Women, P.A.*, 490 So.2d 861 (Miss.1986)).

### 1. Duty

In order "[t]o prevail in any type of negligence action, a plaintiff must first prove the existence of a duty." *Enterprise Leasing Co. v. Bardin*, 8 So.3d 866, 868 (Miss.2009)(citing *Laurel Yamaha, Inc. v. Freeman*, 956 So.2d 897, 904 (Miss.2007)). "Whether a duty exists in a negligence case is a question of law to be determined by the court." *Belmont Homes, Inc. v. Stewart*, 792 So.2d 229, 232 (Miss.2001)(citing *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 174 (Miss.1999)).

In support of their motions, Regions and Trustmark cite numerous cases from jurisdictions other than Mississippi for the general rule that except for limited circumstances (which they assert are not present in this case), banks owe no duty to non-customers[3] to protect them from torts committed by bank customers. *See, e.g., Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224–27 (4th Cir.2002)(applying North Carolina law, bank owed no duty to non-customer defrauded through customer's use of account at bank and bank's services, citing cases from Colorado, Rhode Island, Texas, California, Michigan, New Jersey, New York, and Massachusetts); *In re Terrorist Attacks on Sept. 11, 2001*, 349 F.Supp.2d 765, 830 (S.D.N.Y.2005)(stating general rule under New York law, "[b]anks do not owe non-

2. The bankruptcy court order confirms Douglas's allegations in her Complaint. Specifically, the order approved the $500,000.00 settlement and states that "the compensation and reimbursement of expenses to be received by Schwartz & Associates is approved for $172,414.68." [39-6] at 1. The order further provides that "all excess proceeds after payment of legal fees and reimbursement of expenses shall be tendered to the Chapter 13 Case Trustee for distribution to timely-filed

unsecured Proofs of Claim, or disbursed by Vann F. Leonard, Attorney for Schwartz & Associates, at the direction of the Chapter 13 Case Trustee, all without further Order of this Court." *Id.*

3. Regions and Trustmark allege that Schwartz and Interstate were not customers of their respective banks, [38] at 12; [40] at 6, but submit no evidence by affidavit or otherwise to support this allegation.

customers a duty to protect them from the intentional torts of their customers."); *Guidry v. Bank of LaPlace*, 740 F.Supp. 1208, 1218 (E.D.La.1990)(stating general rule under Louisiana law, "bank ... owes absolutely no duty, fiduciary or otherwise, towards third persons with whom [bank] customer does business."), *modified*, 954 F.2d 278, 286–88 (5th Cir.1992)(applying exception to "well-established general Louisiana rule that a bank owes no duty to noncustomers" and affirming as modified). The rationale behind this general rule has been explained as follows:

> [T]o extend a duty of care to [non-customers] ... would be contrary to the normal understanding of the purpose of a bank account and would expose banks to unlimited liability for unforeseeable frauds.

*Eisenberg*, 301 F.3d at 226 (citing *McCallum v. Rizzo*, 1995 WL 1146812 (Mass.Super.Ct. Oct. 13, 1995)).

In response, Douglas states that the legal question presented is "whether banks that have actual knowledge of embezzlement by an attorney customer may be held liable to non-customers who were victims of the loss." [42] at 1. Claiming that Leonard's accounts at Trustmark and Regions were trust accounts,[4] she alleges that "Trustmark and Regions had actual knowledge that Leonard was embezzling funds from [these] trust accounts because of his recurrent practice of bouncing checks and overdrawing the accounts." *Id.* at 4.

Douglas cites cases from jurisdictions other than Mississippi addressing an exception recognized by some courts to the general rule cited by Defendants. Specifically, Douglas cites cases supporting that

if a bank has knowledge of a customer's misappropriation of funds from the customer's trust account, the bank may be liable to non-customers whose funds were misappropriated from the trust account. Douglas also cites the Mississippi Supreme Court of *Collier v. Trustmark Nat'l Bank*, 678 So.2d 693, 698–99 (Miss.1996). In *Collier*, the Court affirmed the dismissal of a trustee's claim to recover funds embezzled by a former trustee, because the trustee could not prove that the bank had "actual knowledge" that the former trustee was embezzling funds from the trust account. Although Douglas states that she was "unable to locate a case on point decided under Mississippi law," *Id.* at 3, *Collier* lends support that the Mississippi Supreme Court may follow the "actual knowledge" exception recognized by the cases cited by Douglas.

■ "[I]n the absence of on-point Mississippi law, '[this Court's] primary obligation is to make an Erie guess as to how the [Mississippi] Supreme Court would decide'" the state law issue presented to this Court. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243 (5th Cir.2012)(citations omitted). However, it is unnecessary to determine whether the Mississippi Supreme Court would recognize the exception urged by Douglas. Having considered all of the cases cited by Douglas, the Court finds that they do not support the claims of Schwartz or Interstate for one simple and fundamental reason: the plaintiffs in those cases were the people or entities whose funds had been misappropriated. *See Collier*, 678 So.2d at 694–95 (plaintiff trust beneficiaries' funds had been embezzled by former trustee); *see also Go–Best*

---

4. Regions admits that Leonard had an IOLTA account at Regions. Trustmark denies that Leonard's account at Trustmark was an IOLTA account and submitted a document identifying Leonard's Trustmark account as "VANN F LEONARD ATTY AT LAW ES-

CROW ACCT." [39-2] at 1. Douglas responded that it makes no difference that Leonard's Trustmark account was not an IOLTA account, since IOLTA and escrow accounts are both trust accounts. [42] at 5.

*Assets Ltd. v. Citizens Bank of Massachusetts*, 79 Mass.App.Ct. 473,947 N.E.2d 581 (2011)(plaintiff's funds had been misappropriated);[5] *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2nd Cir.2006)(plaintiffs' funds had been misappropriated); *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219 (5th Cir.2010)(plaintiff insurance companies' funds had been looted through complex fraud scheme); *Old Republic Nat'l Title Ins. Co. v. Landmark Closing Co.*, No. 4:09CV00422 JLH, 2010 WL 2228436 (E.D.Ark. June 1, 2010)(plaintiff insurance company's funds had been misappropriated); *City of Helena v. First Nat'l Bank of Helena*, 173 Ark. 197, 292 S.W. 140 (1927)(plaintiff's funds had been misappropriated); *Carmichael v. Security Savings & Loan Ass'n of Conway*, 264 Ark. 657, 574 S.W.2d 651 (1979) (plaintiff's funds had been misappropriated); *Drainage Dist. No. 7 of Poinsett Co. v. Citizens Bank of Jonesboro*, 205 Ark. 435,170 S.W.2d 60 (1943)(plaintiff's funds had been misappropriated).[6]

Whereas the plaintiffs in the cases cited by Douglas were the people or entities whose funds had been misappropriated, none of Schwartz's or Interstate's funds were misappropriated by Leonard from his account at Trustmark or Regions. Rather, all of the funds embezzled by Leonard belonged to Douglas and/or her bankruptcy estate. Although the cases cited by Plaintiff may support that the banks owed a duty to Douglas and/or her bankruptcy estate, they do not support that the banks owed a duty to Schwartz or Interstate. Accordingly, Douglas cannot meet the first requisite element under Mississippi law for the negligence claims asserted in her Complaint: a duty owed by the defendants, Trustmark or Regions, to the plaintiffs, Schwartz or Interstate.

In her Complaint, Douglas attempts to base her negligence claim, in part, on a bank's duty arising under certain federal regulations. Specifically, she alleges that "[f]ederal law requires financial institutions such as Trustmark and Regions to make a suspicious activity report (SAR) with the Financial Crimes Enforcement Network (FinCEN) with the U.S. Treasury Department regarding suspicious or potentially suspicious activity and to report suspicious activity to law enforcement and regulators." [1-1] at 8. She further alleges that if Trustmark and/or Regions had timely filed an SAR, they could have "prevented the embezzlement" of Douglas's funds. *Id.* at 10.

However, "[c]ourts have repeatedly rejected negligence claims based on a bank's duty [to issue an SAR] ..., concluding [the] bank's duty ... is owed *only* to the government and not to private parties." *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. CIV–10–651–D, 2011 WL 3329181, at *8 (W.D.Okla. Aug. 2, 2011). Courts addressing the issue have consistently held that the Bank Secrecy Act requiring such reports does not create a private right of action or establish a duty of care to private

**5.** This Massachusetts Appeals Court case cited by Plaintiff was reversed by the Massachusetts Supreme Judicial Court. *See Go–Best Assets Ltd. v. Citizens Bank of Massachusetts*, 463 Mass. 50, 972 N.E.2d 426, 436 (2012).

**6.** Douglas also cites *Hartford Accident & Indem. Co. v. Bradley*, 211 Ark. 1069, 204 S.W.2d 792 (1947). In *Bradley*, plaintiffs, pursuant to indemnification rights, sued an insurance company which had issued a fidelity bond covering the actions of a bank employee, who had personally "connived and cooperated" with a county treasurer to misappropriate county funds. *Bradley*, 204 S.W.2d at 794. *Bradley* simply is not analogous to and provides no support for the claims asserted by Douglas in this case. The Court further notes that Douglas did not plead an indemnification claim in her Complaint, and in response to Defendants' pending motions, she does not argue that she is attempting to assert an indemnification claim in this case.

parties. *See Armstrong v. Am. Pallet Leasing, Inc.*, 678 F.Supp.2d 827, 874 (N.D.Iowa 2009)("courts have uniformly rejected" argument that Bank Secrecy Act creates duty owed to private parties); *Marlin v. Moody Nat'l Bank, N.A.*, Civil Action No. H–04–4443, 2006 WL 2382325, at *7 (S.D.Tex. Aug. 16, 2006)(Bank Secrecy Act "does not create a private right of action and, therefore, does not establish a standard of care."). Accordingly, this Court finds that Douglas cannot base the negligence claim asserted in this case on an alleged failure by Trustmark or Regions to file an SAR.[7]

The Court also finds that Regions owed no duty to Schwartz or Interstate for another fundamental reason: the funds embezzled by Leonard were never deposited into his IOLTA account at Regions, much less embezzled from it. *See, e.g., Lerner*, 459 F.3d at 278–79 (affirming dismissal of claims against banks in which plaintiffs' misappropriated funds were not deposited). Douglas attempts to impose an actionable duty owed by Regions to Schwartz and Interstate by virtue of Rule 1.15 of the Mississippi Rules of Professional Conduct, which requires banks to provide certain IOLTA account reports to the Mississippi Bar Foundation, Inc. *See* Miss.R.Prof.C. 1.15.[8] However, no such actionable duty to Schwartz or Interstate can exist under the facts of this case, since none of Schwartz's or Interstate's funds were deposited into or embezzled from Leonard's IOLTA account at Regions. As for Trustmark, it appears undisputed that Leonard's Trustmark account was not an IOLTA account. *See* [42] at 5. But even if Leonard's Trustmark account was an IOLTA account, Trustmark would have owed no such actionable duty to Schwartz or Interstate for the same reason—none of their funds were embezzled from Leonard's Trustmark account.

## 2. Proximate Cause

Douglas also cannot satisfy the fourth element of negligence under Mississippi law: proximate cause. In *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331 (Miss.2004), a manufacturer of asbestos-containing products, Owens Corning, filed a direct action against tobacco companies, seeking to recoup its expenses incurred in defense and payment of asbestos claims where the asbestos claimants smoked. Owens Corning alleged that the lung injuries suffered by these asbestos claimants were caused, in part, by smoking. Asserting various theories of liability, Owens Corning claimed to have a right of direct action against the tobacco companies to recover

---

7. The Court further notes that even if a negligence claim could be predicated on a bank's duty to issue an SAR, it could not be used by Douglas under the facts of this case since none of Schwartz's or Interstate's funds were embezzled from Leonard's Trustmark or Regions account.

8. Douglas cites no Mississippi case to support that Rule 1.15 creates a duty on which a negligence claim can be based under Mississippi law. The undersigned believes that if faced with the issue, the Mississippi Supreme Court would find that Rule 1.15 does not establish a duty for purposes of a negligence claim under Mississippi law, as Douglas attempts in this case. Since it is unnecessary to decide this issue under the facts presented, the Court makes no such finding. The Court notes, however, that the Massachusetts Supreme Judicial Court addressed this issue in *Go–Best Assets Ltd. v. Citizens Bank of Massachusetts*, 463 Mass. 50, 972 N.E.2d 426 (2012), and found that Massachusetts Rule of Professional Conduct 1.15 does not create a "duty of care in tort." *Go–Best*, 972 N.E.2d at 435–36. The *Go–Best* Court also rejected the same argument Douglas makes in this case, specifically finding that dishonored checks and negative balances in an attorney's IOLTA account did not "support a reasonable inference" that the bank had "actual knowledge" of the attorney's misappropriation of funds. *Go–Best*, 972 N.E.2d at 432–33, 436.

its expenses in defending and paying these asbestos claims.

■ The Mississippi Supreme Court rejected Owens Corning's claims for lack of proximate cause. In *Owens Corning*, the Court stated:

[O]ne notion traditionally included in the concept of proximate causation is the requirement that there be "some direct relation between the injury asserted and the injurious conduct alleged." [quoting *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)]. For this reason, "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." [citations omitted].

*Holmes* emphasized that although the direct injury test "is not the sole requirement of [proximate] causation, it has been one of its central elements." [*Holmes*, 503 U.S. at 269, 112 S.Ct. 1311][other citation omitted]. This language tells us that to plead a direct injury is a key element for establishing proximate causation, independent of and in addition to other traditional elements of proximate cause. Thus, the other traditional rules requiring that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable, are additional elements, not substitutes for alleging (and ultimately, showing) a direct injury.

[citation omitted]. The Second Circuit ... state[d] that a plaintiff must establish both foreseeability *and* direct injury, which are distinct concepts, and injuries which are wholly derivative of an injury to the property of a third-party, are too remote as a matter of law. [citing *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235–36 (2d Cir.1999)]. "Moreover,

... substituting the foreseeability test, in place of finding the existence of a direct injury, is error. As a general rule, proximate cause requires that both be present." *Id.* at 236. We agree.

*Owens Corning*, 868 So.2d at 339.

■ In her Complaint, Douglas pursues the same type of direct action that Owens Corning pursued and the Mississippi Supreme Court rejected. Whereas Owens Corning's claims were premised on the tobacco companies' alleged liability for the asbestos claimants' damages paid by Owens Corning, Schwartz's and Interstate's claims are premised on Trustmark's and Regions' alleged liability for Douglas's damages paid by Schwartz and Interstate. And as Owens Corning sought its expenses in defending and paying the claims of asbestos claimants who smoked, the Complaint in this case seeks recovery of the "damages incurred [by Schwartz and Interstate] in defending and resolving Shirley Douglas' lawsuit against Schwartz & Associates P.A." [1-1] at 11.

Based on *Owens Corning* and basic rules of proximate cause, the Court finds that Douglas does not state a cognizable claim under Mississippi law. As quoted above, the Mississippi Supreme Court has held that " 'a plaintiff [such as Schwartz or Interstate] who complain[s] of harm flowing merely from the misfortunes visited upon a third person [such as Douglas] by the defendant's acts [is] generally said to stand at too remote a distance to recover[,]' " and "injuries which are wholly derivative of an injury to the property of a third-party [in this case, Douglas's settlement funds], are too remote as a matter of law." Accordingly, the negligence claims asserted in Douglas's Complaint should be dismissed for lack of proximate cause.

### IV. Plaintiff's Motion for Discovery and Motion to Strike Affidavit

After Defendants filed their respective motions, Douglas filed a motion for discov-

ery [45] pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. In an affidavit submitted with his motion for discovery, Plaintiff's counsel refers to "bank records ... attached to [Defendants'] motions" and asserts that "Plaintiff's ability to respond to the evidence offered by Defendants is limited." [45-1] at 1. He, therefore, requests discovery in order to more fully respond to Defendants' motions.

Plaintiff also filed a motion to strike [43] the affidavit of Jason Sweatt attached to Regions' summary judgment motion. In response, Regions withdrew the Sweatt affidavit. *See* [48].

As shown above, the Court did not rely on any records or affidavits submitted by Defendants in deciding their motions. Rather, the Court's opinion is based on the factual allegations in Plaintiff's Complaint. The Court finds, therefore, that Plaintiff's motion for discovery should be denied. Further, Plaintiff's motion to strike should be denied as moot.

### V. Conclusion

For the reasons stated above, Regions' motion for summary judgment [37] and Trustmark's motion for judgment on the pleadings [39] are granted, and all claims asserted by Plaintiff are hereby dismissed with prejudice. Plaintiff's motion to strike [43] and motion for discovery [45] are denied. A separate Judgment will be entered.

SO ORDERED, this the 17th day of August, 2016.